# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF NEW YORK
## CHAMBERS OF THE BANKRUPTCY JUDGE

**HON. STEPHEN D. GERLING**
**CHIEF U.S. BANKRUPTCY JUDGE**

**220 U.S. COURTHOUSE**
**UTICA, NEW YORK 13501**
**(315) 793-8111**
**FAX: 793-8792**

R.  John Clark, Esq.
Daniel B. Berman, Esq.
Attorneys for Wells Fargo Financial
Hancock & Estabrook, LLP
1500 MONY tower I
P.O. Box 4976
Syracuse, NY  13221-4976

Joseph Zagraniczny, Esq.
Stephen A.  Donato, Esq.
Bond, Schoeneck & King, PLLC
Attorneys for D. Clark Ogle
Liquidating Trustee
One Lincoln Center
Syracuse, New York  13202-1355

Re:    Agway, Inc.                                    Case No. 02-65872 Through
       Agway General Agency, Inc.               02-65877
       Brubaker Agronomic Consulting          Chapter 11
       Service LLC                                     Jointly Administered
       Country Best Adams, LLC
       Country Best-Deberry LLC
       Feed Commodities International LLC
       ADV.  PRO.  NO.  05-80135
       D.  Clark Ogle, as Liquidating Trustee of the Agway
       Liquidating Trust, et al. v. Wells Fargo Financial Leasing, Inc.

## LETTER DECISION AND ORDER

Under consideration by the Court is a motion filed by Wells Fargo Financial Leasing, Inc.

("Wells Fargo") seeking to disqualify Bond, Schoeneck & King, PLLC ("BS&K") from serving as

counsel to the Liquidating Trustee of the Agway Liquidating Trust as Plaintiff in an adversary

proceeding commenced by the Liquidating Trustee against Wells Fargo.  The Court heard oral

argument on the motion at Syracuse, New York, on November 1, 2005.

The determination of whether to grant a motion to disqualify an attorney is within the discretion of the Court. *Eastman Kodak Co. v. Sony Corp.*, No. 04-CV-6095, 04-CV-6098, 2004 WL 2984297, at *4 (W.D.N.Y. Dec. 27, 2004); *Sauer v. Xerox Corp.*, 85 F.Supp.2d 198, 199 (W.D.N.Y. 2000). Such motions are disfavored, and the movant bears the burden of demonstrating that disqualification is warranted by satisfying "a high standard of proof." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *University of Rochester v. G.D. Searle & Co.*, No. 00- CIV-6161 LB, 2000 WL 1922271, at *5 (W.D.N.Y. Dec. 11, 2000). Courts are reluctant to grant such motions because (1) courts must be solicitous of a client's right freely to choose his counsel; (2) the motions are often interposed for tactical reasons; and (3) the motions cause inevitable delay, even when made in good faith. *See Evans*, 715 F.2d at 791-92; *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978). Courts must balance their reluctance to disqualify attorneys against the need to "maintain the highest standards of the profession." *Id.* The objective of the disqualification rule is to preserve the integrity of the adversary process. *Evans*, 715 F.2d at 791.

Recognizing the serious impact of attorney disqualification on the client's right to select counsel, the Second Circuit has made clear that disqualification should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint. *Glueck v. Johnson Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *Nyquist*, 590 F.2d at 1246; *Universal City Studios, Inc. v. Reimerdes*, 98 F.Supp.2d 449, 455 (S.D.N.Y. 2000). The Second Circuit has conceded that this test will not correct all possible ethical conflicts, but has also noted that this laudable goal cannot be attained through rulings in the course of litigation without inviting the wholesale filing of motions for tactical reasons, which would result in needless disruption and delay of litigation. *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896 (2d Cir. 1982). When a threat of tainting the trial does not exist, the litigation continues, though the movant may

3

still seek a remedy for the alleged unethical conduct through the disciplinary machinery of the state and federal bar. *Id.* at 896-87. However, if a court has any doubts over whether to disqualify counsel, it must resolve those doubts in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

The Second Circuit has established two rules with respect to disqualification: the "per se" rule and the "substantial relationship" test. *Chemical Bank v. Affiliated FM Ins. Co.*, No. 87 Civ. 0150(VLB), 1994 WL 141951, at *10 (S.D.N.Y. Apr. 20, 1994) (citing *Hartford Accident and Indem. Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 538-39 (S.D.N.Y.1989)).

Courts apply the per se rule when a law firm undertakes to continuously and simultaneously represent two adverse parties, both of which are "clients in the traditional sense." *Glueck*, 653 F.2d at 749. In such a case, the adverse representation is prima facie improper. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976); *University of Rochester*, 2000 WL 1922271, at *5. Under the per se test, the burden of avoiding disqualification shifts to the opposing lawyer to either (1) obtain consent from the client or (2) "show at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Eastman Kodak Co.*, 2004 WL 2984297, at *5 (quoting *Cinema 5, Ltd.*, 528 F.2d at 1387).

Courts apply the substantial relationship test in two situations: (1) when disqualification concerns a former client; and (2) for cases of vicarious or attenuated representation. *Chemical Bank*, 1994 WL 141951, at *10. Under this test, disqualification is granted only when (1) there is a substantial relationship between the subject matter of the attorney's prior representation of the moving party and the issues in the present lawsuit; and (2) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the

4

course of the attorney's prior representation of the moving party. *Evans*, 715 F.2d at 791; *Glueck*, 653 F.2d at 749. The Second Circuit has honed the substantial relationship test by granting disqualification only when the issues involved have been identical or essentially the same. *Government of India*, 569 F.2d at 740; *Chemical Bank*, 1994 WL 141951, at *12.

In *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d at 1386, the Second Circuit stated that a lawyer's duty to his client is that of a fiduciary or trustee. When a client retains a lawyer to litigate a case, the lawyer owes the client "undivided loyalty" at least until the litigation is at an end. In such a situation, the client has the right to expect that the lawyer would accept no retainer to do anything that might be adverse to the client's interests. *Id.* This duty of undivided loyalty prevents an attorney from dropping a client "'like a hot potato, especially if it is in order to keep happy a far more lucrative client.'" *Chemical Bank*, 1994 WL 141951, at *11 quoting *Picker Int'l Inc. v. Varian Assocs., Ltd.*, 670 F.Supp. 1363, 1365-66 (N.D. Ohio 1987). Therefore, a law firm cannot avoid the *Cinema 5* rule by abandoning the client and transforming a continuing relationship to a former relationship. *Chemical Bank*, 1994 WL 141951, at *11. *See also Burda Media, Inc. v. Blumenberg*, No.97 Civ. 7167(RWS), 1999 WL 1021104, at *3 n. 1 (S.D.N.Y. November 8, 1999); *Strategem Dev. Corp. v. Heron Int'l N.V.*, 756 F.Supp. 789, 794 (S.D.N.Y. 1991). In determining whether a law firm is simultaneously representing two adverse parties, courts must assess the status of the law firm's relationship with the adverse parties at the time the conflict arises, not at the time the motion to disqualify is presented to the Court. *Id.* Otherwise, the law firm could eliminate the conflict by abandoning the disfavored client. *Id.*

In the case before the Court, Stephen Donato, Esq. ("Donato"), of BS&K, asserted that D. Clark Ogle, Trustee of the Agway Liquidating Trust (the "LT"), contacted him in late February of

5

2005 and asked him if BS&K would represent Agway in connection with a potential adversary proceeding against Wells Fargo, which arose out of Wells Fargo's purchase of the assets of Telmark LLC ("Telmark Dispute").  *Donato Decl. at* ¶ 2.  Donato said that he then ran a conflicts check, which indicated that another BS&K lawyer, David Hayes, Esq. ("Hayes"), had performed some work for Wells Fargo. *Id.* at ¶ 3.  Donato stated that BS&K then decided to terminate its relationship with Wells Fargo based on several factors: (1) the relationship with Wells Fargo had turned out to be materially different than what had been expected when it was originally undertaken; (2) there were no pending matters for Wells Fargo at the time; (3) both the engagement agreement between Wells Fargo and BS&K and DR 2-110(C) permitted withdrawal; (4) a long time client, Agway, had requested that BS&K represent it in connection with the Telmark Dispute; (5) there was no relationship between any of the work BS&K performed on Wells Fargo's behalf and the Telmark Dispute; and (6) BS&K had not been given, nor had access to, any confidential information by Wells Fargo that was relevant to the Telmark Dispute.  *Id.* at ¶ 5.  After confirming that Hayes had informed Wells Fargo that BS&K had terminated its relationship with it, which Donato believes occurred on March 8, 2005, Donato told the LT that BS&K would represent Agway in the Telmark Dispute. *Id.* at ¶ 6.  On May 19, 2005, BS&K then filed a complaint with the Court on the LT's behalf, which concerned the Telmark Dispute.

This Court is unpersuaded that there is a serious risk of trial taint from BS&K's prior representation of Wells Fargo.  The Second Circuit made clear that a risk of trial taint inheres in circumstances that could impair the ability of the court to reach a fair and just result. *Pfizer, Inc. v. Stryker* Corp., 256 F.Supp.2d 224, 227 (S.D.N.Y. 2003) (discussing *Glueck*, 653 F.2d at 750).  In *Nyquist*, 590 F.2d at 1246, the Second Circuit noted that "with rare exceptions disqualification has

6

been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in

violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's

confidence in the vigor of the attorney's representation of his client,[1] or more commonly (2) where

the attorney is at least potentially in a position to use privileged information concerning the other

side through prior representation, for example, in violation of Canons 4 and 9, thus, giving his

present client an unfair advantage (citations omitted)."[2]  Neither kind of situation is presented in the

facts before the Court.

The LT asserts that he opposes Wells Fargo's disqualification motion and that he is "fully

confident in and satisfied with BS&K's ability to vigorously represent Agway's interests in this

matter." *Aff. of D. Clarke Ogle, as Liquidating Trustee of the Agway Liquidating Trust, sworn to on

Oct. 25. 2005,* at ¶ 10 ("LT Aff.").  BS&K asserts that in April 2004, Daniel Edinger, who was then

Vice President of Wells Fargo Financial Leasing - Rural Market, contacted BS&K and requested

that BS&K propose to provide legal services as counsel to Wells Fargo in new large lease/loan

commercial transactions of up to $5 million in value.  *Hayes Decl.* at ¶ 2. BS&K apparently began

representing Wells Fargo in new commercial transactions in May, 2004. *Id.* at ¶ 3.   In July 2004,

Jacqueline Whalen, Wells Fargo Legal & Credit Coordinator, informed BS&K that Wells Fargo

would ask BS&K to perform general legal matters from time to time.  *Id.* at ¶ 4.  However, BS&K

asserts that the legal work that BS&K anticipated they would perform did not continue for the

remainder of 2004 and 2005.  *Id.* at ¶ 6.  BS&K's last three monthly bills apparently were for

---

[1]Canon 5 provides: A lawyer should exercise independent judgment on behalf of a client.
Canon 9 provides: A lawyer should avoid even the appearance of professional impropriety.

[2]Canon 4 provides: A lawyer should preserve the confidences and secrets of a client.

$428.10, $188, and $70.50, respectively. *Id.* BS&K asserted in oral argument before the Court that they only worked with Ms. Whalen, a paralegal at Wells Fargo. Wells Fargo has never asserted with specificity how BS&K had access to its confidences and secrets. Wells Fargo just asserts that BS&K was "privy to, and made suggestions regarding Wells Fargo's practices and procedures with respect to obtaining and perfecting security for financial transactions..." *Wells Fargo's Reply Mem.*, 3. In oral argument, Wells Fargo asserted that BS&K "knew how we do things - they understand our thinking." Courts must discourage motions "born of little more than hardball litigation strategy sessions and advanced where there is no threat of actual prejudice." *Chemical Bank v. Affiliated FM Ins. Co.*, No. 87 Civ. 0150(VLB), 1994 WL 141951, at *14 (quoting *Hartford Accident*, 721 F.Supp. at 541). This Court finds that Wells Fargo has not demonstrated with specificity how they would be prejudiced if BS&K continues to represent the LT in the Telmark Dispute. Asserting that BS&K knows how Wells Fargo "do things" is not enough.

In *Strategem Development Corp.*, 756 F.Supp. at 792, a law firm identified as Epstein, Becker & Green ("Epstein Becker") represented Strategem Development in a breach of contract action against Heron Properties, which involved certain Manhattan buildings known as "Heron Tower I" and "Heron Tower II." At the same time, Epstein Becker represented Fidelity Services Corporation ("FSC"), a wholly-owned subsidiary of Heron Properties, in unrelated labor actions pertaining to Heron Tower I. Shortly before the commencement of the Strategem lawsuit, Heron Properties moved to disqualify Epstein Becker. Epstein Becker then withdrew as counsel for FSC. The district court held that because Epstein Becker had not clearly terminated its representation of FSC and fixed the parameters of its representation of FSC by the time preparations for the Strategem lawsuit began, Epstein Becker was per se ineligible to represent Strategem in the lawsuit. *Id.* at 793.

8

This is not the case here. Unlike Epstein Becker, BS&K terminated its representation of Wells Fargo before it agreed to represent the Agway Liquidating Trustee.

In *Universal City Studios, Inc. v. Reimerdes*, 98 F.Supp.2d at 450-51, Time Warner Entertainment Company ("Time Warner") joined other motion picture studios in seeking to enjoin the defendants from posting a computer program on Internet websites, which allegedly defeated an encryption system used by the plaintiffs on their DVDs. Time Warner moved to disqualify the defendants' counsel because Time Warner was paying attorney's fees for that same counsel in an unrelated suit involving the copyright and trademark of the term "Muggles" from the Harry Potter books. The law firm responded to the motion to disqualify by seeking leave to withdraw as counsel for Time Warner in the unrelated suit. The district court held that the law firm was not entitled to avoid disqualification by dropping the disfavored client "like a hot potato" and transforming a continuing relationship to a former relationship. *Id.* at 454-55. The law firm's attempt to drop the client, however, was not fatal to its efforts to avoid disqualification. The court ruled that disqualification for an alleged conflict of interest is appropriate only if there is a significant risk of trial taint, which means that the conflict will affect the attorney's ability to vigorously represent his client or that the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter. *Id.* at 455. Although the court was troubled by the law firm's breach of ethics, it denied the motion to disqualify because there was no real risk of tainting the trial, disqualification would prejudice the defendants and Time Warner sat on its hands too long (one month) to have substantial claims on the court's exercise of discretion. *Id.* at 455-56. The court found that Time Warner's motion seemed "tactically motivated." *Id.* at 456. The court concluded that the proper place for the controversy was the appropriate professional disciplinary

9

body. *Id.*

Unlike the law firm in *Universal City Studios*, BS&K never represented Wells Fargo in a law suit at the same time it represented the LT in the Telmark Dispute.  Therefore, if BS&K did commit a breach of ethics in dropping Wells Fargo like a "hot potato," its breach was clearly not as serious as the breach committed by the law firm in *Universal City Studios*, and in that case the district court allowed the law firm to continue representing the defendants.

The absence of any real risk of trial taint or prejudice to Wells Fargo compels the Court to suspect that Wells Fargo has pursued this motion solely to obtain a tactical advantage.  Wells Fargo has made little effort in specifying how its interests in the Telmark Dispute would be affected adversely by BS&K's conduct.  BS&K may have breached its ethical duty in abandoning Wells Fargo, but the Court finds that if it does not disqualify BS&K, there will be no risk of tainting the Telmark Dispute or prejudicing Wells Fargo.  The Court also finds that there is no substantive nexus between the Telmark Dispute and the work BS&K performed for Wells Fargo. Furthermore, disqualifying BS&K would prejudice the LT because BS&K has provided significant legal representation to the LT and Agway over a number of years.  The Court previously appointed BS&K as special counsel to Agway, Inc. and its subsidiaries, and appointed BS&K as special counsel to the LT on August 19, 2004.  The LT asserts that BS&K is uniquely familiar with Agway, the Agway bankruptcy proceedings, and the LT's work as the liquidating trustee.  *LT Aff.* at ¶ 6.  Additionally, this case is unlike the situation in *Cinema 5*, 528 F.2d at 1386, in which the Second Circuit ruled that when a client retains a lawyer to litigate a case, the lawyer owes the client "undivided loyalty" at least until the litigation is at an end.  Here, Wells Fargo does not dispute BS&K's assertion that when it terminated its relationship with Wells Fargo, there were no pending matters between the two

10

parties.

The Court's ability to reach a fair and just result in the Telmark Dispute is not impaired by BS&K's actions in terminating its relationship with Wells Fargo. The Second Circuit held that when there is no claim that the trial will be tainted, appearance of impropriety is "simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Nyquist*, 590 F.2d at 1247. BS&K has demonstrated that there will be no conflict in loyalties or diminution in the vigor of its representation of the LT. Wells Fargo may seek a remedy for the alleged unethical conduct through the appropriate state or federal bar disciplinary body, but that remedy does not lie with the Court. The Court denies Wells Fargo's motion to disqualify BS&K.

IT IS SO ORDERED.


Dated at Utica, New York

this 9th day of December 2005

/s/  Stephen D. Gerling
STEPHEN D.  GERLING
Chief U.S. Bankruptcy Judge